Dr. Louis C. **THIBODEAUX**, Plaintiff,

v.

Michael **RUPERS**, et al., Defendants.

No. C–1–99–695.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 13, 2001.

Steven C. Shane, Bellevue, KY, Maury Montgomery Tepper, Cincinnati, OH, for Plaintiff.

Howard Marc Schwartz, Marc David Mezibov, Sirkin Pinales Mezibov & Schwartz–1, Cincinnati, OH, for Defendants.

### ORDER

BECKWITH, District Judge.

This matter is before the Court on Plaintiff Dr. Louis C. Thibodeaux's Motion for Summary Judgment as to Liability Only (Doc. No. 18) and Defendants Michael Rupers and California Fine Paper, Inc.'s Motion to Strike (Doc. No. 22). For the reasons set forth below, Plaintiff's motion for summary judgment is **GRANTED IN PART, DENIED IN PART, AND MOOT IN PART.** Defendants' motion to strike is **MOOT.**

### I. *Background*

The facts in this case are relatively straightforward and, for the most part, are undisputed. The plaintiff in this case is Dr. Louis C. Thibodeaux. The defendants are Michael Rupers and California Fine Paper, Inc. Rupers is the president and CEO of California Fine Paper, Inc. Dr. Thibodeaux married Rupers' sister, Teresa, in 1989. According to papers filed in the Domestic Relations Division of the Hamilton County Court of Common Pleas, Doctor and Mrs. Thibodeaux legally separated in April 1997 and Dr. Thibodeaux filed a complaint for divorce in July 1997. *See* Teresa Thibodeaux Dep. Ex. 2.

In June and July of 1997, Rupers extended three separate loans, evidenced by promissory notes, to Mrs. Thibodeaux totaling $7,805.47. *See id.* Ex. 1. Mrs. Thibodeaux obtained the latter two loans, totaling approximately $5,300, in order to pay a private investigator to obtain proof of infidelity on the part of Dr. Thibodeaux. The other loan was used for household purposes, including the care and support of the Thibodeaux's two children. In is undisputed that Dr. Thibodeaux was unaware that Mrs. Thibodeaux borrowed money from her brother.

On four separate occasions between September 1997 and July 1998, Mrs. Thibodeaux asked Rupers to obtain credit reports on Dr. Thibodeaux because she believed that he was either concealing assets or otherwise engaging in financial misconduct during the course of the divorce proceedings. Using the facilities of California Fine Paper, Inc. and an account established by California Fine Paper, Inc. with Dun & Bradstreet, Rupers obtained credit reports on Dr. Thibodeaux on September

2, 1997, September 12, 1997, April 23, 1998, and July 31, 1998, and forwarded them to his sister. Rupers Dep. at 64. The reports revealed no financial misconduct. It is undisputed that Dr. Thibodeaux had no business relationship with either Rupers or California Fine Papers.

On September 1, 1999, Plaintiff filed suit against Rupers and California Fine Paper, Inc. under the Fair Credit Reporting Act ("the FCRA"), 15 U.S.C. § 1681, *et seq.* The Complaint alleges that Defendants violated the FCRA by willfully or negligently obtaining Dr. Thibodeaux's credit report under false pretenses and without permissible purpose.

Following the close of discovery, Plaintiff filed a motion for summary judgment as to liability only (Doc. No. 18) on the following issues:

1) that Rupers' accesses of Plaintiff's credit report on September 4, 1997 and September 12, 1997 were not for permissible purposes under former § 1681b.[1]

2) that Rupers' accesses of Plaintiff's credit report on April 23, 1998 and July 31, 1998 were not for permissible purposes under current § 1681b.

3) that Rupers' accesses of Plaintiff's credit report on September 4, 1997 and September 12, 1997 were obtained willfully and under false pretenses in violation of former § 1681q.

4) that Rupers' accesses of Plaintiff's credit report on April 23, 1998 and July 31, 1998 result in automatic liability under current § 1681b because they were not for permissible purposes.

5) that Rupers' accesses of Plaintiff's credit report on September 4, 1991

and September 12, 1997 entitle Plaintiff to punitive damages under former § 1681n.

6) that Rupers' accesses of Plaintiff's credit report on April 23, 1998 and July 31, 1998 were willful, therefore entitling Plaintiff to punitive damages under current § 1681n.

7) that Rupers' accesses of Plaintiff's credit report on April 23, 1998 and July 31, 1998, if not willful, were negligent and, therefore, entitle Plaintiff to compensatory damages and attorney's fees under current § 1681o, with a right to seek punitive damages at trial.

*See* Doc. No. 18, at 1–2. Rupers opposes Plaintiff's summary judgment motion on essentially two grounds. Rupers first argues that in the event the loans to Mrs. Thibodeaux became a part of the marital estate in the divorce proceedings, he was potentially a creditor of Dr. Thibodeaux. Therefore, he was entitled to obtain Dr. Thibodeaux's credit report in order to monitor his ability to repay the loans. In any event, Rupers argues, whether he acted negligently or willfully is question of fact properly reserved for determination by a jury.

## II. *Summary Judgment Standard of Review*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the

---

**1.** In 1996, Congress enacted the Consumer Credit Reporting Reform Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 (1996), which substantially amended the FCRA. The amendments became effective September 30, 1997. Thus, based on the dates of the transactions, this case involves application of both the pre and post-amendment FCRA.

non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.*

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 472, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). "[T]he issue of material fact required by Rule 56© ... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court,

*Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. *Id.; Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.*

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Id.* Rule 56(a) and (b) provide that parties may move for summary judgment

"with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. *Analysis*

As noted above, this case involves alleged violations of both the pre-amendment FCRA and the post-amendment FCRA. Therefore, the Court will set forth in some detail the individual sections implicated in this case.

### A. *The Fair Credit Reporting Act*

Congress enacted the FCRA in order to ensure that consumer reporting agencies exercise their duties with fairness, impartiality, and respect for consumers' right to privacy. *See* 15 U.S.C. § 1681 (West 2001). Therefore, the FCRA imposes a number of requirements and restrictions on the compilation, maintenance, dissemination, and use of consumer credit reports. The present case involves the proper or permissible uses of credit reports under the FCRA.

Regarding permissible uses of credits reports, the pre-amendment FCRA provided:

**Permissible purposes of consumer reports**

A consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

15 U.S.C.A. § 1681b (West 1996). This section did not explicitly put any restrictions on the end-user's use of the credit report. However, § 1681n imposed civil liability upon a user of credit information who willfully failed to comply with any requirement of the FCRA,[2] and § 1681q imposed criminal liability upon a person who obtained credit information under

---

**2.** Former § 1681n provided:

**Civil liability for willful noncompliance**

Any consumer reporting agency or user of information which willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C.A. § 1681n (West 1994).

false pretenses.[3] Courts read these two sections together to find that the FCRA imposed civil liability upon any person who willfully obtained information from a credit reporting agency under false pretenses. *See Kennedy v. Border City S & L Ass'n,* 747 F.2d 367, 368 (6th Cir.1984). Thus, a person who did not have a permissible purpose for obtaining a consumer report, as defined by § 1681b, and who failed to disclose such impermissible purpose, was found to have obtained a consumer report under false pretenses. *See Yohay v. City of Alexandria Emp. Credit Union,* 827 F.2d 967, 971–72 (4th Cir.1987); *Hansen v. Morgan,* 582 F.2d 1214, 1219–20 (9th Cir. 1978).

■ The Consumer Credit Reporting Reform Act of 1996 ("the CCRRA"), Pub.L. No. 104–208, 110 Stat. 3009 (1996), substantially altered the FCRA. As is relevant here, the CCRRA amended § 1681b by explicitly restricting the use of consumer reports to the permissible purposes enumerated in §§ 1681b(a), (b), or (c):

> **Certain use or obtaining of information prohibited.**—A person shall not use or obtain a consumer report for any purpose unless—
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance with section 607 [15 U.S.C. § 1681e] of this title by a prospective user of the report through a general or specific certification.

*See* Pub.L. No. 104–208, 110 Stat. 3009, 3009–433, 34 (codified as amended at 15

U.S.C. § 1681b(f)(1998)). Plaintiff contends that the CCRRA eliminated the requirement of the pre-amendment case law that the defendant willfully obtain the consumer report under false pretenses in order to impose civil liability. Plaintiff essentially contends that the CCRRA made § 1681b a strict liability statute. The Court disagrees.

■ In addition to the amendments to § 1681b, Congress also amended § 1681n to specifically impose liability for knowingly obtaining a consumer report under false pretenses or knowingly without a permissible purpose:

> **CIVIL LIABILITY FOR KNOWING NONCOMPLIANCE.**—Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater.

*See* Pub.L. No. 104–208, 110 Stat. 3009, 3009–446 (1996)(codified as amended at 15 U.S.C. § 1681n(b)(1998)). In essence, in amending this section, Congress simply codified the pre-amendment case law, as stated in *Kennedy* and *Hansen, supra,* which imposed liability for willfully obtaining credit information under false pretenses. As Defendant correctly points out, if Congress had wished to create a strict liability statute, no purpose would have been served by retaining § 1681o, which imposes civil liability for negligently failing to comply with the FCRA's requirements.[4]

---

**3.** Former § 1681q provided:

> **Obtaining information under false pretenses**
>
> Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined not more than $5,000

or imprisoned not more than one year, or both.

15 U.S.C.A. § 1681q (West 1994).

**4.** Section 1681o provides:

> Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any con-

As Defendant also correctly observes, it is a basic principle of statutory construction that a court should not interpret one section in a way that renders another section of the same enactment superfluous. *See Royal Geropsychiatric Serv., Inc. v. Tompkins,* 159 F.3d 238, 245 (6th Cir. 1998). Plaintiff's interpretation of the 1996 amendments does just that.

Accordingly, the Court holds that CCRRA did not turn § 1681b into a strict liability statute, and that, in order to recover for a violation, Plaintiff must demonstrate either willful or knowing conduct under § 1681n, or negligent conduct under § 1681o.

### B. *Analysis*

The first issue to be resolved is whether Rupers had a permissible purpose for obtaining Plaintiff's credit report. As noted above, whether a person obtained a credit report under false pretenses hinges largely upon whether he had a permissible purpose for obtaining the report, and if not, whether he disclosed to the credit reporting agency the impermissible purpose. If Rupers had a permissible purpose for obtaining Plaintiff's credit report, there would be no violation of either the pre-amendment FCRA or the post-amendment FCRA.

■ Rupers argues that summary judgment on this issue is inappropriate because he believed that as a potential creditor of Plaintiff, he had a right to access Plaintiff's credit report. Rupers points out that one permissible purpose for obtaining a credit report is for use in reviewing or collecting an account. *See* 15 U.S.C. § 1561b(3)(A). While Rupers may have believed he had a *right* to access Plaintiff's credit report as a creditor, the record is clear and undisput-

ed that Rupers' *purpose* for obtaining Plaintiff's credit report was to help his sister, Plaintiff's soon-to-be ex-wife, find out if Plaintiff was concealing assets or engaging in other financial misconduct, and to prevent her from being taken advantage of by Plaintiff. Indeed, each credit check run by Rupers was prompted by a phone call from Mrs. Thibodeaux voicing concern that Plaintiff was up to something unsavory. *See* Rupers Dep. at 81, 118, 119, 126, 147. The record reflects that Rupers, despite self-serving contentions otherwise, was not in fact concerned about Plaintiff's ability to repay the loans. Rupers did not obtain Plaintiff's credit report before loaning money to Mrs. Thibodeaux and admitted that Plaintiff's creditworthiness was not a factor in determining whether to make the loans. *See id.* at 96. In fact, Mrs. Thibodeaux has never repaid any portion of the three loans, even though they all came due in June and July of 2000, nor has Rupers ever sought payment from Plaintiff. The only conclusion that can be drawn from the evidence is that in reality, Rupers had no concern, and possibly no expectation, that the loans would ever be repaid. Therefore, the Court concludes there is no question that Rupers obtained Plaintiff's credit reports as a brother trying to protect a sister rather than as a creditor attempting to protect his investment.

Having ascertained the true purpose behind Rupers' actions, the question then becomes whether that purpose was permissible under the FCRA. The Court concludes that it was not. The Court's research tends to indicate that investigating the financial activities of a former or estranged spouse is not a permissible pur-

sumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C.A. § 1681o(a) (West 2001).

pose for obtaining a credit report under the FCRA. *See, e.g., Yohay v. City of Alexandria Emp. Credit Union, Inc.,* 827 F.2d 967, 969, 971–72 (4th Cir.1987); Appendix–Commentary on the Fair Credit Reporting Act, 16 C.F.R. Pt. 600, App. § 604(A)(3)(2001) ("There is no permissible purpose to obtain a consumer report on a nonapplicant former spouse or on a nonapplicant spouse who has legally separated or otherwise indicated an intent to legally disassociate with the marriage."). *See also Duncan v. Handmaker,* 149 F.3d 424, 427–28 (6th Cir.1998) (holding that use of credit report in litigation outside the realm of debt collection generally will be an impermissible purpose). Cases cited by Rupers are distinguishable. *Baker v. Bronx–Westchester Investigations, Inc.,* 850 F.Supp. 260 (S.D.N.Y.1994), in which the court held that a private investigation agency was not liable for obtaining the ex-husband's credit report, is distinguishable because in that case the ex-wife had a court order requiring the husband to pay child support, making her a judgment creditor, and the agency was merely attempting to collect a debt. *Id.* at 262. In this case, there is no evidence that Mrs. Thibodeaux was a judgment creditor of Dr. Thibodeaux's, and to the extent she was, there is no evidence that Dr. Thibodeaux was in arrears in child support payments. Furthermore, even if Dr. Thibodeaux was attempting to lower his support payments, it appears that he was lawfully petitioning the domestic relations court for an order rather than stopping payments altogether. *See* Teresa Thibodeaux Dep. at 32. *Cambridge Title Co. v. Transamerica Title Ins. Co.,* 817 F.Supp. 1263 (D.Md.1992), is distinguishable because in that case there was substantial objective evidence to believe that plaintiff had misappropriated funds from an escrow account. *See id.* at 1278. By comparison, in this case, Mrs. Thibodeaux's belief that Plaintiff was concealing assets was based on nothing more than naked mistrust. Accordingly, the Court concludes as a matter of law that Rupers did not have a permissible purpose for obtaining Plaintiff's credit report.

■ Having said that, however, the issue remains whether Rupers acted knowingly, willfully, or even negligently, in accessing Plaintiff's credit reports. *See Duncan,* 149 F.3d at 428 (stating, after ruling that district court erred in finding defendants had permissible purpose for obtaining plaintiff's credit report, "to incur liability for obtaining a credit report under false pretenses, a party must act knowingly and willfully."); *see also id.* at 429 ("[I]n order to incur civil liability for operating under false pretenses, a party must act willfully and purposefully with a motivation to injure.") (internal quotation marks omitted). As Rupers correctly points out, questions involving a party's state of mind are generally appropriately resolved by a jury rather than on summary judgment. *See Moore, Owen, Thomas & Co. v. Coffey,* 992 F.2d 1439, 1447 (6th Cir.1993).

■ As the Court has observed, Rupers apparently believed that as a potential creditor of Plaintiff, he had a right to access Plaintiff's credit report even though his real motivation for doing so was to help out his sister. The Court notes that under Ohio law, a domestic relations court could have held Plaintiff liable for a portion of Mrs. Thibodeaux's loans, even if he was not aware of them or did not specifically approve them, to the extent that the money was used for marital purposes. *See Myers v. Myers,* No. L–99–1168, 2000 WL 331573 (Ohio Ct.App. Mar. 31, 2000). In this case, however, Mrs. Thibodeaux used at least one of the loans for care and support of the children, clearly a marital purpose. Rupers Dep. at 112. Therefore, under Ohio law, it appears that Rupers could have held a reasonable belief that Plaintiff might be liable to him for the

loans. If Rupers held a reasonable belief that he was a creditor of Plaintiff, a jury might find that he held a reasonable, albeit mistaken, belief that he was entitled to access Plaintiff's credit report, even if he was only using it to assist his sister. In other words, Rupers may have reasonably believed that being a potential creditor of Plaintiff, without more, entitled him to access Plaintiff's credit report. Under the circumstances, the Court cannot conclude as a matter of law that Rupers acted willfully and knowingly, or even negligently, in obtaining Plaintiff's credit report.

Accordingly, to the extent Plaintiff moves for summary judgment on the issue of willfulness and negligence, the motion for summary judgment is not well-taken and is **DENIED.** Since the Court has declined to enter summary judgment on the issue of Rupers' state of mind, it need not reach the issue whether Plaintiff is entitled to punitive damages at this time. Accordingly, the motion for summary judgment is **MOOT** to the extent that Plaintiff seeks a ruling that he is entitled to punitive damages as a matter of law.

### IV. *Motion to Strike*

Defendants move to strike Exhibit A attached to Plaintiff's motion for summary judgment. Exhibit A purports to be the master agreement entered into between Rupers, on behalf of California Fine Papers, Inc., and Dun & Bradstreet. Defendants move to strike Exhibit A because it is unidentified and unauthenticated. The Court notes that neither party has explained the possible relevance of the master agreement to this case, other than Plaintiff stating that it shows that Defendants agreed to comply with the requirements of the FCRA. The Court supposes that Defendants could be held liable for violating the FCRA even in the absence of an agreement to abide by its terms. Therefore, we are unsure as to the agreement's importance to this case. Neverthe-

less, the Court has reached its conclusions here without reference to Exhibit A. Accordingly, the motion to strike is **MOOT.**

### *Conclusion*

To the extent that Plaintiff moves for summary judgment on the issue of permissible purpose under the FCRA, the motion for summary judgment is well-taken and is **GRANTED.** To the extent that Plaintiff moves for summary judgment on the issues of negligence and willfulness, the motion for summary judgment is not well-taken and is **DENIED.** The motion for summary judgment is **MOOT** as to whether Plaintiff is entitled to punitive damages. In addition, Defendants' motion to strike is **MOOT.**

**IT IS SO ORDERED.**