MARZLUFF, Appellant,

v.

VERIZON WIRELESS et al., Appellees.

[Cite as *Marzluff v. Verizon Wireless*, 151 Ohio App.3d 733, 2003-Ohio-913.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19405.

Decided Feb. 28, 2003.

</div>

---

Thomas J. Manning, for appellant.

Scott A. King and Christine M. Haaker, for appellee Verizon Wireless.

David Jablinski, for appellee Karen Wiegand.

---

FAIN, Presiding Judge.

{¶ 1} Plaintiff-appellant Steve Marzluff appeals from a summary judgment rendered against him on his claims for damages arising from violations of the Fair Credit Reporting Act, Section 1681 et seq., Title 15, U.S.Code. Marzluff contends that the trial court erred by finding that defendant-appellee Karen Wiegand did not violate the Act and that she lacked the intent necessary to incur liability under the Act.

{¶ 2} We conclude that under the Act, Wiegand had a permissible purpose for accessing Marzluff's credit information. Therefore, she did not violate the Act, and we need not reach the issue of whether the trial court correctly ruled that she lacked the necessary intent.

{¶ 3} The judgment of the trial court is affirmed.

I

{¶ 4} Plaintiff-appellant Steve Marzluff was married to defendant-appellee Karen Wiegand from 1988 to 1994. During the marriage the parties resided at 7641 Winding Cove with their two minor children. Pursuant to the terms of the decree dissolving their marriage, Wiegand received the marital residence, and Marzluff was required to pay child support to her.

{¶ 5} After the dissolution, Marzluff and Wiegand entered into an oral agreement wherein Wiegand agreed to transfer to Marzluff her interest in the marital property. In exchange, Marzluff agreed to pay Wiegand $6,000 and to refinance the mortgage on the residence with Marzluff as the sole debtor. Wiegand deeded the property to Marzluff in 1995. However, Marzluff never refinanced the property, so that Wiegand's liability on the existing mortgage was never extinguished. Also, Marzluff stopped making his child support payments in January 2000.

{¶ 6} Wiegand began working for defendant-appellee Verizon Wireless in 1997. By February 2001, she had been promoted to Senior Business Account

Executive. As part of her job, Wiegand was required to obtain credit approval for applicants. In order to obtain this approval, Wiegand would submit the applicant's name, address, Social Security Number, date of birth, and place of employment into the Verizon computer system. The computer would respond by showing a "credit class" and a "credit score," but did not give the applicant's actual credit report or record. Verizon gave Wiegand written rules regarding when she was permitted to request credit scores. Wiegand understood that it was against company policy to request a credit class or score information without authorization from a potential customer.

{¶ 7} In February 2001, Wiegand attempted to apply for a mortgage loan on a new residence. During the application process, she learned that her credit report indicated that she remained indebted on the mortgage for the marital residence. Wiegand, who was working at home when she learned of her remaining indebtedness, became upset. She used her Verizon laptop computer to access Marzluff's credit class and credit score to determine whether Marzluff's credit score was sufficient to have enabled him to have refinanced the mortgage. Wiegand informed neither Verizon, Marzluff, nor any third party that she had accessed Marzluff's information.

{¶ 8} As a result of Wiegand's actions, Verizon's automated system generated a letter to Marzluff referencing his application for cellular telephone service. Marzluff contacted Verizon and informed the company that he had not submitted an application. Verizon then discovered that Wiegand had obtained Marzluff's credit score without his permission, contrary to company policy. Upon being confronted, Wiegand admitted her actions. Verizon fired Wiegand.

{¶ 9} Marzluff filed this action against Wiegand and Verizon in 2001. The claims against Wiegand included allegations of invasion of privacy, violation of the Fair Credit Reporting Act ("FCRA"), and negligence. The claims against Verizon included allegations of violation of the FCRA and liability under the theories of actual or apparent authority and respondeat superior. Wiegand and Verizon filed motions for summary judgment regarding each count of the complaint, and the trial court rendered summary judgment in their favor on each claim. From this judgment, Marzluff appeals.[1]

## II

{¶ 10} Marzluff's first assignment of error is as follows:

---

1. Marzluff does not appeal from the summary judgment rendered against him on his claims of invasion of privacy or negligence against Wiegand. His appeal is limited to his claims that Wiegand violated the FCRA and that Verizon, as her employer, is vicariously liable.

{¶ 11} "The trial court erred in finding that appellee Karen Wiegand had a permissible purpose under the Fair Credit Reporting Act in obtaining appellant's credit information."

{¶ 12} Marzluff contends that Wiegand did not have a permissible purpose for accessing his credit information, and that the trial court therefore erred in finding that she did not violate the FCRA.

{¶ 13} Our review of a summary judgment is de novo. *Nilavar v. Osborn* (1998), 127 Ohio App.3d 1, 10, 711 N.E.2d 726. In reviewing a summary judgment, an appellate court must apply the standard found in Civ.R. 56. According to Civ.R. 56, a trial court should grant summary judgment only when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. With this standard in mind, we address Marzluff's claim that summary judgment was improper.

{¶ 14} The Fair Credit Reporting Act, codified at Section 1681 et seq., Title 15, U.S.Code, is "aimed at protecting consumers from inaccurate information in consumer reports and at the establishment of credit reporting procedures that utilize correct, relevant, and up-to-date information in a confidential and responsible manner." *Jones v. Federated Fin. Res. Corp.* (C.A.6, 1998), 144 F.3d 961, 965. While the Act's primary purpose is to regulate consumer reporting agencies, it has also been found to cover the conduct of users who request credit information. *Pappas v. Calumet City* (N.D.Ill.1998), 9 F.Supp.2d 943, 946. The Act makes a person liable for wilful or negligent noncompliance. Sections 1681n and 1681o, Title 15, U.S.Code. Civil liability for users of credit information hinges on two inquiries: (1) whether the user had a permissible purpose enumerated in Section 1681b; and (2) whether the information was obtained under false pretenses. If the report is obtained under false pretenses and is not for a permissible purpose under Section 1681b, then liability attaches. Regardless of the stated purpose, so long as a permissible purpose exists for obtaining the information, the obtaining of credit information does not violate the Act. *Pappas,* supra, at 949, fn. 3. So long as a permissible purpose exists, credit information may be obtained without the consumer's consent; a showing of the existence of a permissible purpose is a complete defense. *Edge v. Professional Claims Bur., Inc.* (E.D.N.Y.1999), 64 F.Supp.2d 115, 117.

{¶ 15} Permissible purposes for obtaining credit information are set forth in Section 1681b. That section states, in part, that a consumer credit report

is furnished for a permissible purpose where the party requesting the report "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." Section 1681b(a)(3)(A). "The issue of whether a report has been obtained for a permissible purpose presents a question of law that may be decided in the context of a motion for summary judgment." *Edge v. Professional Claims Bur., Inc.* (E.D.N.Y.1999), 64 F.Supp.2d 115, 117–118. So long as a user has a reason to believe that the consumer owes her money, the purpose is permissible regardless of whether the debt is in fact owed. *Korotki v. Atty. Serv. Corp., Inc.* (D.Md. 1996), 931 F.Supp. 1269, 1276. "Where a permissible purpose for obtaining the credit information is demonstrated, then, as a matter of law, the information cannot have been obtained under false pretenses." *Edge,* supra, at 117. "Under such circumstances the defendant is entitled to summary judgment." Id.

{¶ 16} In this case, by using Verizon's computer system to access the credit information, Wiegand gave the appearance of accessing Marzluff's information for the purpose of selling him services for Verizon. There is no dispute that Marzluff did not apply to Verizon for any services. Instead, Wiegand accessed Marzluff's report in order to determine whether he had a credit rating sufficient to permit him to refinance the marital residence. Given that the evidence shows that Wiegand and Marzluff had entered into an agreement whereby in exchange for transferring the property to Marzluff, he agreed to pay her money and to refinance the residence in order to release her from liability on the existing mortgage, Wiegand had a reasonable belief that Marzluff owed her a debt based upon the information she received on her own credit report when she attempted to finance her new house.

{¶ 17} Marzluff contends that Wiegand did not have a permissible purpose. First, he contends that any agreement regarding the marital residence is unenforceable because it was not reduced to writing. Second, he cites *Thibodeaux v. Rupers* (S.D.Ohio 2001), 196 F.Supp.2d 585, as standing for the proposition that investigating the finances of a former spouse is not a permissible purpose under the FCRA. Finally, he cites Section 604(A)(3), Title 16, C.F.R., Part 600 App., as authority for his claim that Wiegand lacked a permissible purpose.

{¶ 18} We begin with the claim that the agreement with regard to the mortgage residence was not enforceable because it was not reduced to writing. It appears that Marzluff intends to implicate the Statute of Frauds as a bar to any claim Wiegand may have with regard to the pay off of the mortgage on the marital residence. We note that this argument must fail because it is not required under the FCRA that Wiegand have a legally enforceable claim, but

rather that she merely have a reasonable belief that she is owed a debt. Thus, the enforceability of the debt is irrelevant. Additionally, Wiegand's transfer of the property to Marzluff constituted partial performance of the agreement, removing the agreement from the Statute of Frauds, thereby rendering this argument moot. *Gurich v. Janson* (Nov. 17, 2000), Ashtabula App. No. 99–A–0006, 2000 WL 1733354.

{¶ 19} Next, Marzluff contends that *Thibodeaux v. Rupers* (S.D.Ohio 2001), 196 F.Supp.2d 585, makes it clear that an individual cannot access the credit information of a former spouse. We disagree. Instead, in *Thibodeaux* the · defendant, Rupers, loaned his sister money in order to permit her to hire a private investigator to obtain proof of infidelity on the part of her ex-husband, Dr. Thibodeaux. Id. at 586. On four different occasions, Rupers at Mrs. Thibodeaux's request obtained credit reports on Dr. Thibodeaux. Id. Mrs. Thibodeaux believed that Dr. Thibodeaux was concealing assets. Id. When Dr. Thibodeaux learned that his reports had been obtained he filed suit. Id. Summary judgment was rendered in Dr. Thibodeaux's favor.

{¶ 20} Rupers argued that summary judgment was inappropriate because he was a potential creditor of Dr. Thibodeaux, given that he had loaned monies to his sister. *Thibodeaux* at 591. The trial court found that Rupers's undisputed purpose for obtaining the report was to help his sister find out whether her ex-spouse was hiding assets, not for assistance in collecting a debt. Id. The court did not, as Marzluff contends, hold that it is never permissible to check the credit report of an ex spouse. Therefore, we conclude that this argument lacks merit.

{¶ 21} Finally, Marzluff refers to comments recorded at Section 604(A)(3), Title 16, C.F.R., Part 600 App., in which the Federal Trade Commission has indicated that "[t]here is no permissible purpose to obtain a consumer report" on a former spouse. We find these comments inapplicable to the case at hand. Specifically, the cited provisions state that a creditor, in determining whether to extend credit, cannot access the credit information of the applying debtor's nonapplicant spouse or nonapplicant former spouse. In other words, if an individual applies to open an account with a bank, so long as the nonapplicant spouse will not be able to use the account and will not be liable on the account, the nonapplicant's information may not be accessed. Thus, a creditor may not obtain information concerning someone who is neither a debtor nor a proposed debtor but merely the spouse of a debtor or proposed debtor. In the case before us, by contrast, the material relationship between Marzluff and Wiegand was one of debtor and creditor. That they were formerly married to one another is immaterial.

{¶ 22} Here, Wiegand had at least some reason to believe that Marzluff owed her a debt and that he had failed to comply with the terms of their transaction.

These facts are sufficient to create a permissible purpose under the FCRA, and the trial court did not err in finding in favor of Wiegand.

{¶ 23} Given that Wiegand had a permissible purpose in obtaining the report, and that she has not violated the FCRA, it follows that Verizon cannot be held vicariously liable.

{¶ 24} Accordingly, the first assignment of error is overruled.

## III

{¶ 25} Marzluff's second assignment of error is as follows:

{¶ 26} "The trial court erred in finding that Wiegand's actions lacked the intent necessary to incur civil liability under the Fair Credit Reporting Act."

{¶ 27} Marzluff contends that the trial court erred in finding that Wiegand did not act with the requisite intent to incur liability under the Act.

{¶ 28} Given our disposition of the first assignment of error, in which we have concluded that Wiegand had a permissible purpose in accessing Marzluff's credit report so that she has a complete defense to any claim that she violated the Act, we need not determine whether the trial court erred in finding that she lacked the intent to violate the Act. Accordingly, the second assignment of error is overruled as moot.

## IV

{¶ 29} Both of Marzluff's assignments of error having been overruled, we affirm the judgment of the trial court.

Judgment affirmed.

BROGAN and WOLFF, JJ., concur.