DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Edward Williams ("Williams"), appeals from the decision of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} In 2004, Williams contacted First Merit with regard to obtaining a $1.2 million dollar loan for a start-up business to build low income housing. Eleanor Hammond ("Hammond"), an employee at First Merit, informed Williams that she would need to review a business plan and tax information in order to process the loan. In July of 2004, Williams submitted a 39 page loan "proposal" that included, among other things, a business plan and Williams' personal financial statement. The "proposal" was signed by Williams.
 {¶ 3} Upon review of Williams' submitted materials, Hammond completed a loan application, which, as she stated in her affidavit, was customary practice. She also stated that it was customary that these applications were not signed by the prospective borrower. Hammond *Page 2 
then submitted the application to the Business Banking Services department to obtain a credit check. First Merit did not obtain authorization from Williams to obtain his credit report. After the application and credit check were complete, Williams' loan request was rejected.
 {¶ 4} Williams filed a complaint in Cuyahoga County against First Merit and Hammond, alleging the denial of his loan was discriminatory and that First Merit's actions in obtaining his credit report without his express permission was fraudulent and an invasion of privacy. First Merit moved to transfer the case to Summit County, which the trial court granted.
 {¶ 5} On September 21, 2007, Williams filed for summary judgment. On October 3, 2007, First Merit responded to Williams' motion and filed its own motion for summary judgment. On November 16, 2007, the trial court denied Williams' motion for summary judgment and granted First Merit's motion for summary judgment. Williams timely appeals from the trial court's grant of First Merit's summary judgment, raising four assignments of error for our review. We have combined some of Williams' assignments of error for ease of review.
 II. ASSIGNMENT OF ERROR I "TRIAL COURT ERRED BY NOT RESPONDING TO MY NEWLY FOUND EVIDENCE[.]"
 ASSIGNMENT OF ERROR II "THE COURT ERRED BY NOT GIVING ME LAWS MY MOTION FOR A CHANGE OF VENUE WAS BASED. THE JUDGE DENIAL OF MY MOTION FOR CHANGE OF VENUE WAS NOT BASE IN LAW HE REFUSED TO GIVE A LEGAL EXPLANATION."
 {¶ 6} In his first two assignments of error, Williams contends that the trial court erred by not responding to his newly found evidence and denying his motion for a change of venue. We do not agree. *Page 3 
 {¶ 7} Our review of Williams' brief on appeal reveals that he has failed to present an argument to support his first two assignments of error. An appellant must affirmatively demonstrate error on appeal and must provide legal arguments that substantiate the alleged error.State v. Humphries, 9th Dist. No. 06CA00156, 2008-Ohio-388, at ¶ 47-48. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. No. 18349, at *8. This Court "will not guess at undeveloped claims on appeal." State v. Wharton, 9th Dist. No. 23300,2007-Ohio-1817, at ¶ 42.
 {¶ 8} We note that Williams has presented his argument before this Court pro se. With respect to pro se litigants, this Court has observed:
 "[P]ro se litigants should be granted reasonable leeway such that their motions and pleadings should be liberally construed so as to decide the issues on the merits, as opposed to technicalities. However, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that he remains subject to the same rules and procedures to which represented litigants are bound. He is not given greater rights than represented parties, and must bear the consequences of his mistakes. This Court, therefore, must hold [pro se appellants] to the same standard as any represented party." (Internal citations omitted.) Sherlock v. Myers, 9th Dist. No. 22071, 2004-Ohio-5178, at ¶ 3.
 {¶ 9} Even a liberal reading of Mr. Williams' brief does not reveal that he has presented an argument to support his first and second assignments of error. Accordingly, his first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "TRIAL COURT ERRED BY IGNORING ESTABLISHED FAIR CREDIT REPORTING ACTS LAWS AND PRACTICES."
 ASSIGNMENT OF ERROR IV "IN ACTIONS BASED ON ALLEGED VIOLATION OF FAIR CREDIT REPORTING ACTS 15 USCS ET SEQ. SUMMARY JUDGMENT WAS NOT APPROPRIATE WHERE QUESTIONS OF MATERIAL FACT EXIST." *Page 4 
 {¶ 10} We recognize that an appellant's assignments of error provide this Court with a roadmap to guide our analysis. However, we read Williams' arguments pertaining to his third and fourth assignments of error to argue that the trial court erred when it granted First Merit's motion for summary judgment. We do not agree.
 {¶ 11} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 12} Pursuant to Civil Rule 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 13} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ. R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party "may not rest upon the mere allegations and denials in the pleadings" but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735. *Page 5 
 {¶ 14} Initially, Williams appears to argue here and below that First Merit discriminated against him by denying him the loan. However, we find that Williams has failed to support this argument and to separately assign it as error. See App. R. 16(A). We therefore decline to address this argument here. App. R. 12(A)(2). It appears that Williams takes issue with the trial court's grant of First Merit's summary judgment insofar as the trial court found that First Merit's review of his credit report was valid. Therefore, we will limit our analysis to this argument.
 {¶ 15} In its summary judgment motion, First Merit stated that it denied Williams' application for a $1.2 million dollar loan based on the following factors: that he had a low personal credit score, a history of delinquencies as set forth in his credit report, that there was no credit report for the business as it was a start-up business, that he had small cash reserves, that his development proposal was not current and incomplete, and that his annual personal income was $14,400. Among other things, First Merit pointed to Williams' deposition, Eleanor Hammond's affidavit, and Williams' Equifax credit report.
 {¶ 16} Both parties agree that Williams did not sign any type of form authorizing First Merit to review his credit report. Therefore, there does not appear to be a genuine issue of material fact in this case. Rather, Williams contends that First Merit was not entitled to judgments a matter of law. Civ. R. 56(C). We do not agree.
 "The Fair Credit Reporting Act (`FCRA'), codified at Section 1681 et seq., Title 15, U.S. Code, was enacted to protect `consumers from inaccurate information in consumer reports and at the establishment of credit reporting procedures that utilize correct, relevant, and up-to-date information in a confidential and responsible manner.' Jones v. Federated Financial Res. Corp. (C.A.6, 1998), 144 F.3d 961, 965. While the FCRA's primary purpose is to regulate consumer-credit reporting agencies, it also covers the conduct of individuals requesting credit information. Pappas v. Calumet City
(N.D.Ill. 1998), 9 F.Supp.2d 943, 946." Hall v. CFIC Home Mtg., 175 Ohio App.3d 587, 2008-Ohio-1016, at ¶ 22. *Page 6 
Williams cites section 1681n(b), which provides a civil cause of action against "[a]ny person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose." Williams claims that because he did not sign an authorization form, First Merit obtained his credit report without a permissible purpose and under false pretenses. "However, the showing of a permissible purpose to obtain a credit report is an absolute defense to a claim that a person obtained a credit report under false pretenses or knowingly without a permissible purpose. Further, misrepresentation is nonactionable if the FCRA would permit the requesting party to receive a credit report for an unstated but permissible purpose." (Internal citations omitted.) Hall, supra, at ¶ 24.
 {¶ 17} First Merit counters that it had a permissible purpose to obtain Williams' credit report. We find support for this argument in15 U.S.C. 1681b(f).
 {¶ 18} This section states, in pertinent part:
 "A person shall not use or obtain a consumer report for any purpose unless —
 "(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
 "(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification." 15 U.S.C. 1681b(f).
Equifax was authorized to furnish a consumer report pursuant to15 U.S.C. 1681b(a)(3),
 "(3) To a person which it has reason to believe-
 "(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
 "***
 "(F) otherwise has a legitimate business need for the information — *Page 7 
 "(i) in connection with a business transaction that is initiated by the consumer[.]" 15 U.S.C. 1681b.
 {¶ 19} While section 1681b(a)(2) does provide that a consumer reporting agency may furnish a consumer report when the consumer provides written instruction to do so, as Williams contends, this is not the only allowance under the section. Rather, Equifax was authorized to furnish Williams' credit report to First Merit because First Merit intended to use the information in connection with the loan transaction, i.e., an extension of credit, and had a legitimate business need to do so. 15 U.S.C. 1681b(a)(3)(A), (F).
 {¶ 20} Next, under section 1681b(f)(2), we look to section 1681e to determine if "the purpose is certified *** by a prospective user of the report through a general or specific certification." Section 1681e(a) states that the prospective user of the information must identify themselves, certify the purpose for which the report is sought, and certify that the information will be used for no other purposes. This section refers to section 1681b to identify the purposes for which the report may be sought. In her affidavit Hammond stated that the credit report was sought "to be used in connection with a credit transaction initiated by and involving Mr. Williams[.]" Further, Hammond stated that obtaining a credit report was a standard procedure to process loan applications at First Merit. Accordingly, we find that the purposes of section 1681e(a) have been satisfied.
 {¶ 21} Because Equifax was authorized to furnish the credit report under section 1681b(a)(3), and because First Merit has certified the use of the credit report under 1681e(a), we find that First Merit had a permissible purpose to obtain the credit report pursuant to15 U.S.C. 1681b(f). Because First Merit had a permissible purpose, First Merit has an absolute defense against Williams' claim that it fraudulently obtained his credit report. Hall, supra, at ¶ 24. *Page 8 
 {¶ 22} Therefore, we find that the First Merit had a permissible purpose to obtain Williams' credit report, and, as such, First Merit was entitled to judgment as a matter of law. Accordingly, Williams' third and fourth assignments of error are overruled.
 III. {¶ 23} Williams' assignments of error are overruled and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARLA MOORE FOR THE COURT
SLABY, J. CARR, P. J. CONCUR *Page 1