[Cite as *Med. Mut. of Ohio v. FrontPath Health Coalition*, 2023-Ohio-243.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Medical Mutual of Ohio, et al.                    Court of Appeals No.  L-21-1226

    Appellants                                 Trial Court No.  CI0201703154

v.

FrontPath Health Coalition                        **DECISION AND JUDGMENT**

    Appellee                                   Decided:  January 27, 2023

* * * * *

Richard M. Knoth, Scott C. Holbrook, Breaden M. Douthett,
Sean E. McIntyre, and Hallie R. Israel, for appellants.

John J. McHugh, III, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellants, Medical Mutual of Ohio and Medical Mutual Services, L.L.C.

(collectively "Medical Mutual"), appeal from the judgments of the Lucas County Court

of Common Pleas, dismissing with prejudice two counts from their amended complaint, and later denying a motion to amend. For the reasons that follow, we reverse.

## I. Facts and Procedural Background

{¶ 2} Medical Mutual and appellee, FrontPath Health Coalition ("FrontPath") are competitors for public contracts to provide health benefit services to municipal corporations in northwest Ohio, in this case Wood County and the City of Toledo. At a very basic level, Medical Mutual alleged that FrontPath recruited to serve on its board, public officials who were the health benefit decision makers for the municipal corporations. FrontPath then encouraged and aided those public officials in using their influence and authority to steer public contracts for the provision of health benefit services to FrontPath.

{¶ 3} Medical Mutual initiated the present action on June 27, 2017, when it filed a four-count complaint against appellee, FrontPath Health Coalition. The first count sought a judgment declaring that the contracts between FrontPath and Wood County and the city of Toledo were null and void. The second count contained a claim for civil liability for criminal acts, alleging that FrontPath aided and abetted government employees in entering into the contracts in violation of Ohio law. The third count contained a claim for tortious interference with a contractual or business relationship. Finally, the fourth count contained a claim for violation of the Ohio Valentine Act— which prohibits conspiracy against trade—alleging that FrontPath engaged in

2.

monopolistic behavior with regard to the market for purchase of health insurance services.

{¶ 4} On November 5, 2018, Medical Mutual amended its complaint. The amended complaint added a fifth count alleging a violation of the Corrupt Practices Act under R.C. 2923.31.

{¶ 5} Shortly thereafter, FrontPath moved to dismiss the amended complaint pursuant to Civ.R. 12(B)(6). On June 24, 2019, the trial court granted FrontPath's motion as to Counts I, II, IV, and V, dismissed those claims with prejudice, and denied Medical Mutual's alternative motion to further amend its complaint.

{¶ 6} Following continued discovery, Medical Mutual moved for leave to file a second amended complaint on January 30, 2020. The second amended complaint sought to add as defendants, FrontPath's President and Chief Executive Officer, Susan Szymanski, and City of Toledo Health Care Cost Containment Committee member and FrontPath Board of Trustee member, Don Czerniak. In addition to the original five counts in the amended complaint, the proposed second amended complaint also sought to add three claims: Count VI, a civil Corrupt Practices Act claim premised upon alleged violations of the Defend Trade Secrets Act, 18 U.S.C. § 1832; Count VII, a claim for theft of protectable trade secrets under 18 U.S.C. § 1832, et seq.; and Count VIII, a claim for theft of trade secrets under R.C. 1333.61, et seq.

3.

**{¶ 7}** On June 16, 2020, the trial court denied Medical Mutual's motion for leave to file a second amended complaint.

**{¶ 8}** Eventually, in September 2021, the matter proceeded to a jury trial on Count III, which was the claim for tortious interference with a contractual or business relationship. Following a month-long trial, the jury returned with a verdict award for Medical Mutual in the amount of $1,781,750.00. The jury declined to award punitive damages.

## II. Assignments of Error

**{¶ 9}** Medical Mutual has timely appealed, and now asserts three assignments of error for our review:

> 1. The trial court erred by dismissing with prejudice Count V of MMO's First Amended Complaint setting forth an Ohio Corrupt Practices Act claim (the "CPA claim").

> 2. The trial court erred by dismissing with prejudice Count II of MMO's First Amended Complaint setting forth a claim for civil liability for criminal acts (the "civil liability claim").

> 3. The trial court erred by denying MMO's motion for leave to amend its complaint to assert claims against new defendants Donald Czerniak and Susan Szymanski.

### III. Analysis

{¶ 10} Medical Mutual's first and second assignments of error argue that the trial court erred when it dismissed with prejudice the Corrupt Practices Act violation claim and the civil liability for criminal acts claim, respectively. Because those assignments of error involve similar questions of law, we will address them together, beginning with the civil liability for criminal acts claim. We will then address Medical Mutual's third assignment of error regarding the trial court's denial of leave to amend the complaint.

### A. Civ.R. 12(B)(6) Dismissal of Claims

{¶ 11} "Ohio is a notice-pleading state." *Maternal Grandmother v. Hamilton Cty. Dept. of Job and Family Servs.*, 167 Ohio St.3d 390, 2021-Ohio-4096, 193 N.E.3d 536, ¶ 10. "This means that outside of a few specific circumstances * * * a party will not be expected to plead a claim with particularity. Rather, a 'short and plain statement of the claim' will typically do." *Id.*, quoting Civ.R. 8(A). "The purpose of notice pleading is clear: to simplify pleadings to a short and plain statement of the claim and to simplify statements of the relief demanded * * * to the end that the adverse party will receive fair notice of the claim and an opportunity to prepare his response thereto." (Internal quotations omitted.) *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, 31 N.E.3d 637, ¶ 13, quoting *Anderson v. BancOhio Natl. Bank*, 1st Dist. Hamilton No. C-840913, 1985 WL 8844, *1 (Nov. 27, 1985).

5.

{¶ 12} "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). "In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought." *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. "The allegations of the complaint must be taken as true, and those allegations and any reasonable inferences drawn from them must be construed in the nonmoving party's favor." *Id.*, citing *O'Brien* at syllabus. However, "while we are to assume the facts alleged in the complaint are true, we do not assume the legal conclusions alleged to be drawn from those facts are also true and disregard any unsupported conclusions included among the facts alleged in the complaint." *STE Invests., LLC v. Macprep, Ltd.*, 6th Dist. Ottawa No. OT-21-036, 2022-Ohio-2614, ¶ 14; *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 7 (10th Dist.) ("The court need not, however, accept as true unsupported legal conclusions in the complaint."). "A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Wilson v. Riverside Hosp.*, 18 Ohio St.3d 8, 10, 479 N.E.2d 275 (1985).

6.

**{¶ 13}** "Appellate review of a trial court's decision to dismiss a complaint pursuant to Civ.R. 12(B)(6) is de novo. *STE Invests.* at ¶ 14, citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

### 1. Civil Liability for Criminal Acts Claim

**{¶ 14}** In its second assignment of error, Medical Mutual argues that the trial court erred in dismissing its claim for civil liability for criminal acts.

**{¶ 15}** In *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 13, the Ohio Supreme Court held that "R.C. 2307.60 creates a civil cause of action for damages resulting from any criminal act, unless otherwise prohibited by law." R.C. 2307.60(A)(1) provides,

> Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

**{¶ 16}** Relevant here, Medical Mutual alleged:

> 12. Over the course of several years, FrontPath has enlisted employees of the Governmental Employers to serve as directors/trustees of

7.

FrontPath and function on behalf of FrontPath and pursue its interests (collectively, "Government-Affiliated Trustees"). These Government-Affiliated Trustees played significant roles for FrontPath. For example, Ms. Pam Boyer, while performing duties as human resource/benefits manager for Wood County, served for years on the FrontPath Board, even serving the governance role as Board Chairperson. Ms. Boyer acted on behalf of FrontPath to thwart Plaintiff's business efforts in Northwest Ohio.

* * *

14. Plaintiffs regularly submit bids, or would submit bids in an unconflicted offering environment, to the Governmental Employers and other public entities in response to solicitations for bids to provide health benefit services.

15. FrontPath also regularly submits competing bids or is a participant in the bidding process to the Governmental Employers in response to the same bid solicitations to which Plaintiffs respond, or would respond.

16. On multiple occasions, FrontPath has been selected as the successful bidder or was a successful participant in the bidding process with regard to bid solicitations as to which Plaintiffs were, or would have been, a competing bidder.

8.

17. On multiple occasions, some of the Governmental Employers and other public entities have awarded contract extensions to FrontPath without soliciting competing bids from unconflicted health benefit service providers, including Plaintiffs.

* * *

23. Government-Affiliated Trustees have used the authority or influence of their offices to secure authorization of the contracts between FrontPath, and the Governmental Employers or other public entities in violation of Ohio law.

* * *

35. FrontPath solicited, procured or aided and abetted the Government-Affiliated Trustees in their violation of Ohio law and, thereby, FrontPath violated Ohio law.

36. By recruiting the Government-Affiliated Trustees as FrontPath board members, FrontPath and the Government-Affiliated Trustees joined in a malicious combination to injure the Plaintiffs in person or property, in a way not competent for one alone, resulting in actual damages.

37. The entry of FrontPath, and the Governmental Employers or other public entities into the contracts in violation of Ohio law has injured Plaintiffs.

38. Pursuant to Ohio law, Plaintiffs are entitled to compensatory damages, punitive or exemplary damages, and costs and attorney's fees from FrontPath for the injury suffered by Plaintiffs due to the violations of Ohio law.

{¶ 17} In its motion to dismiss, FrontPath argued that count two of the complaint did not state a claim for relief. In so arguing, FrontPath characterized count two as a claim for aiding and abetting tortious conduct, which is not a recognized theory of recovery. Alternatively, FrontPath characterized the count as one for civil conspiracy. However, FrontPath argued that the intra-corporate conspiracy doctrine precluded the finding of a conspiracy between FrontPath and the government-affiliated trustees.

{¶ 18} In response, Medical Mutual asserted that count two was a claim for civil liability for criminal acts under R.C. 2307.60. Medical Mutual stated that, in this case, the alleged criminal act was complicity to commit a violation of Ohio's ethics laws, specifically R.C. 2921.42(A)(1), which prohibits a public official from using his or her authority or influence "to secure authorization of any public contract in which the public official, a member of the public official's family, or any of the public official's business associates has an interest." Violation of R.C. 2921.42(A)(1) is a felony of the fourth

10.

degree. R.C. 2921.42(E). Medical Mutual further argued that FrontPath was complicit because it "[s]olicit[ed] or procure[d] another to commit the offense," or "[a]id[ed] or abet[ted] another in committing the offense." R.C. 2923.03(A)(1) and (2).

{¶ 19} In its reply, FrontPath argued that Medical Mutual's subsequent explanation of the legal theory it was pursuing does not cure the deficiency caused by Medical Mutual's failure to plead the commission of an underlying criminal act. Furthermore, FrontPath argued that the complaint does not adequately plead the crime of complicity in that it did not allege that FrontPath met the required mens rea of knowingly.

{¶ 20} When the trial court granted FrontPath's motion to dismiss, it offered two justifications. First, the trial court reasoned, without further explanation, that "R.C. 2307.60 does not extend to all crimes, only those that injure the claimant in person or property." Second, the trial court reasoned that a criminal conviction is required before liability may be imposed pursuant to R.C. 2307.60, and the complaint did not allege any such conviction.

{¶ 21} On appeal, Medical Mutual argues that a criminal conviction is not required before liability may be imposed pursuant to R.C. 2307.60. At the time the trial court entered its judgment, that question was still unresolved. However, subsequent to the trial court's June 24, 2019 judgment entry, the Ohio Supreme Court decided *Buddenberg v. Weisdack*, 161 Ohio St.3d 160, 2020-Ohio-3832, 161 N.E.3d 603, ¶ 11, in which it held that R.C. 2307.60 "does not require proof of an underlying criminal

11.

conviction." Therefore, this aspect of the trial court's reasoning in granting FrontPath's motion to dismiss was in error.

{¶ 22} Turning to the ultimate question of whether the motion to dismiss was properly granted, we hold that it was not. At the outset, we note that under the liberal requirements of notice pleading, Medical Mutual was not required to plead the specific legal theories or statutes upon which it relied. "A party is not required to plead the legal theory of recovery or the consequences which naturally flow by operation of law from the legal relationships of the parties. 'The rules make clear that a pleader is not bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief.'" *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 526, 639 N.E.2d 771 (1994), quoting McCormac, Ohio Civil Rules Practice (2 Ed.1992) 102, Section 5.01. Furthermore, even if Medical Mutual pleaded the wrong claim, "[a] complaint should not be dismissed for failure to state a claim merely because the allegations do not support the legal theory on which the plaintiff relies. Instead, a trial court must examine the complaint to determine if the allegations provide for relief on any possible theory." *Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 667, 653 N.E.2d 1186 (1995).

{¶ 23} Here, construing the allegations and reasonable inferences in Medical Mutual's favor, we find that Medical Mutual has adequately pleaded a cause of action under R.C. 2307.60 for civil liability from FrontPath's alleged criminal act of complicity

12.

to violate R.C. 2921.42(A)(1). Medical Mutual alleged that FrontPath intentionally recruited and enlisted public officials to serve on its board of trustees, that FrontPath solicited and helped those officials use their authority and influence to secure public contracts for FrontPath for which Medical Mutual had submitted bids, and that Medical Mutual was injured by this conduct. Medical Mutual's allegations, while sparse, satisfy the elements of complicity to commit a violation of R.C. 2921.42(A)(1). Therefore, we hold that the trial court erred when it granted FrontPath's motion to dismiss. *See CitiMortgage, Inc. v. Rudzik*, 7th Dist. Mahoning No. 13 MA 20, 2014-Ohio-1472, ¶ 19-21 (trial court erred in dismissing R.C. 2307.60 and 2307.61 claim for civil liability for embezzlement crime where complaint alleged that the bank told existing borrowers that they were eligible for a home loan modification, had the borrowers make reduced payments during a trial period, placed the payments into escrow causing the borrowers to default on the mortgage, and then moved to foreclose).

{¶ 24} More so than arguing that the trial court properly dismissed the civil liability for criminal acts claim, FrontPath argues that the matter is moot. FrontPath explains that in its civil liability for criminal acts claim, Medical Mutual sought to recover damages for FrontPath's alleged criminal behavior in being complicit to a violation of R.C. 2921.42(A)(1). FrontPath contends, however, that Medical Mutual successfully recovered on this theory in the jury trial on the remaining claim for tortious interference with a contractual or business relationship. FrontPath emphasizes that the

13.

jury's decision was directed by the trial court's instruction that "it is illegal for a public official to knowingly employ the authority and influence of his or her office to secure a public contract, including contracts for the provision of health care benefits, for an organization on which he or she sits as a board member," which is effectively a restatement of R.C. 2921.42(A)(1). Thus, FrontPath concludes that Medical Mutual has already recovered its damages, and should not be permitted a second bite of the apple.

{¶ 25} Medical Mutual responds that the matter is not moot. Medical Mutual argues that a civil liability for criminal acts claim under R.C. 2307.60 is subject to a longer statute of limitations than a claim for tortious interference with a business or contractual relationship. Thus, Medical Mutual argues that through its civil liability for criminal acts claim, it would be able to recover damages related to alleged specified contract renewals and requests for proposals that occurred in 2011 and 2012.

{¶ 26} "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *State ex rel. Ames v. Summit Cty. Court of Common Pleas*, 159 Ohio St.3d 47, 2020-Ohio-354, 146 N.E.3d 573, ¶ 8, quoting *State ex rel. Gaylor, Inc. v. Goodenow*, 125 Ohio St.3d 407, 2010-Ohio-1844, 928 N.E.2d 728, ¶ 10. "Conversely, if an actual controversy exists because it is possible for a court to grant the requested relief, the case is not moot, and a consideration of the merits is warranted." *Goodenow* at ¶ 11.

**{¶ 27}** Here, we agree with Medical Mutual that the matter is not moot. "A claim for tortious interference is subject to the four-year statute of limitations set forth in R.C. 2305.09(D)." *Morrow*, 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, at ¶ 41. Medical Mutual asserts that a claim for civil liability for criminal acts is subject to a six-year statute of limitations, citing *Harris v. Cunix*, 2022-Ohio-839, 187 N.E.3d 582, ¶ 27 (10th Dist.). However, *Harris*—in a lengthy analysis—recognizes that other courts have considered claims for civil liability for criminal acts to be subject to a one-year statute of limitations. *Id.* at ¶ 24, citing, e.g., *Ettayem v. H.E.R., LLC.*, 5th Dist. Delaware No. 19 CAE 12 0070, 2020-Ohio-4647 ("R.C. 2307.60 allows complainants to bring a civil claim for harm caused to them by others' criminal activity, and any such claim is subject to a one-year statute of limitations under R.C. 2305.11(A), which sets a one-year limitation period for any 'action upon a statute for a penalty or forfeiture.'"); *see also State ex rel. Cty. of Cuyahoga v. Jones Lang Lasalle Great Lakes Co.*, 8th Dist. Cuyahoga No. 104157, 2017-Ohio-7727, ¶ 131 ("R.C. 2307.60 contemplates a penalty, therefore it is subject to the one-year statute of limitations in R.C. 2305.11(A)."). At this stage, we find it imprudent to decide whether a claim under R.C. 2307.60 is subject to a six-year or one-year statute of limitations, particularly where we would be doing so for the first time on appeal, and without the benefit of argument by the parties. Instead, it is sufficient for the moment that an actual controversy exists, and it is possible for the trial

15.

court to award the requested relief. Therefore, we reject FrontPath's argument, and hold that the claim for civil liability for criminal acts is not moot.

{¶ 28} Accordingly, Medical Mutual's second assignment of error is well-taken.

## 2. Corrupt Practices Act Claim

{¶ 29} In its first assignment of error, Medical Mutual argues that the trial court erred when it dismissed its Corrupt Practices Act claim. The Ohio Corrupt Practices Act is patterned after the federal RICO statute, and provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." R.C. 2923.32(A)(1). R.C. 2923.34(A) grants a civil remedy to "[a]ny person who is injured or threatened with injury by a violation of section 2923.32 of the Revised Code." Notably, a person who is directly or indirectly injured by the corrupt activity "shall have a cause of action for triple the actual damages the person sustained," if the person "prove[s] the violation or conspiracy to violate [R.C. 2923.32] and actual damages by clear and convincing evidence." R.C. 2923.34(E). That person shall also be entitled to recover reasonable attorney fees in the trial and appellate courts. R.C. 2923.34(F).

{¶ 30} "To state a civil claim under the [Corrupt Practices Act], 'a plaintiff must establish: (1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses; (2) that the prohibited criminal

conduct of the defendant constitutes a pattern; and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." *Morrow* at ¶ 27; *Peirce v. Szymanski*, 6th Dist. Lucas No. L-11-1298, 2013-Ohio-205, ¶ 23; *Hall v. CFIC Home Mtg.*, 175 Ohio App.3d 587, 2008-Ohio-1016, 888 N.E.2d 469, ¶ 42 (12th Dist.). Unlike the civil liability for criminal acts claim, which is subject to notice pleading, the Corrupt Practices Act claim is subject to a higher pleading standard. "The failure to plead any of [the elements of a Corrupt Practices Act claim] *with particularity* results in a defective complaint that cannot withstand a Civ.R. 12(B)(6) motion to dismiss." (Emphasis added.) *Id.*, citing *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App.3d 284, 291, 629 N.E.2d 28 (8th Dist.1993).

{¶ 31} Here, Medical Mutual alleged:

> 12. Over the course of several years, FrontPath has enlisted employees of the [City of Toledo and Wood County] to serve as directors/trustees of FrontPath and function on behalf of FrontPath and pursue its interests (collectively, "Government-Affiliated Trustees"). These Government-Affiliated Trustees played significant roles for FrontPath. For example, Ms. Pam Boyer, while performing duties as human resource/benefits manager for Wood County, served for years on the FrontPath Board, even serving the governance role as Board Chairperson.

17.

Ms. Boyer acted on behalf of FrontPath to thwart Plaintiffs' business efforts in Northwest Ohio.  * * *

* * *

16.     On multiple occasions, FrontPath has been selected as the successful bidder or was a successful participant in the bidding process with regard to bid solicitations as to which Plaintiffs were, or would have been, a competing bidder.

17.     On multiple occasions, some of the Governmental Employers and other public entities have awarded contract extensions to FrontPath without soliciting competing bids from unconflicted health benefit service providers, including Plaintiffs.

* * *

56.     FrontPath is a person as that term is defined in Revised Code 2923.31(G).

57.     FrontPath is and has been associated with an enterprise—an ongoing association-in-fact whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise—and conducts and participates in the affairs of that enterprise through a pattern of corrupt activity.

18.

58. The enterprise consists of, among others, representatives of the Governmental Employers, third-party administrators, and other public officials, and exists to secure and control the market for health benefit services in Northwest Ohio.

59. Third-party administrators provide administrative services in conjunction with health benefit providers like FrontPath. FrontPath coordinates with certain third-party administrators, representatives of the Governmental Employers, and other public officials to steer business toward FrontPath and its third-party administrator partners. Among other things, FrontPath submits joint or coordinating bids with third-party administrators for government contracts, and representatives of the Governmental Employers and other public officials influence the selection of those bids by the Governmental Employers.

60. FrontPath has knowingly, intentionally, and maliciously engaged in, attempted to engage in, conspired to engage in, solicited others to engage in, and participated in, both directly and indirectly, the affairs of the enterprise through a pattern of corrupt activity.

61. That pattern of corrupt activity consists of at least two predicate acts, including, but not limited to, unlawfully, willfully, and knowingly, soliciting and conspiring with others to violate R.C. 2921.42,

which makes it a crime for any public official to "[a]uthorize, or employ the authority or influence of the public official's office to secure authorization of any public contract in which the public official, a member of the public official's family, or any of the public official's business associates has an interest." R.C. 2921.42(A).

62. As further described above, the Government-Affiliated Trustees and other public officials use their access and influence to further the goals of the enterprise—specifically, to secure government contracts on behalf of FrontPath and the third-party administrators.

63. These predicate acts are related, in that they had the same or similar purposes, results, participants, victims, and methods of commission. The predicate acts were continuous and occurred over multiple years, although the acts were not so connected that they constitute a single event.

64. As a direct and proximate result of FrontPath's conduct of the affairs of the enterprise through a pattern of corrupt activity, including the above-listed predicate acts, Plaintiffs have been injured in their business and property. Plaintiffs' injuries include, but are not limited to, suffering competitive injury, loss of business revenue, and other compensatory damages in excess of $25,000. Plaintiffs were intended targets of FrontPath's wrongful conduct.

20.

{¶ 32} In its motion to dismiss, FrontPath argued that Medical Mutual did not plead its claim with specificity, noting that while Medical Mutual made sweeping generalizations that government-affiliated trustees used their access and influence to secure government contracts on behalf of FrontPath, it did not specify a single instance when the alleged "steering" took place regarding any particular bid or government contract. Furthermore, FrontPath argued that Medical Mutual failed to sufficiently plead the existence of an enterprise; FrontPath contends that the conclusory language of the complaint provides no facts to support an allegation that the unidentified third-party administrators and public officials ever held or maintained any interest or control in an ongoing enterprise that was separate and apart from the pattern of corrupt activity.

{¶ 33} In opposing the motion to dismiss, Medical Mutual first argued that the requirement of an enterprise separate and apart from the pattern of corrupt activity was eliminated by the Ohio Supreme Court in *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, syllabus ("The existence of an enterprise, sufficient to sustain a conviction for engaging in a pattern of corrupt activity under R.C. 2923.32(A)(1), can be established without proving that the enterprise is a structure separate and distinct from a pattern of corrupt activity."). Medical Mutual then argued that the allegations in its complaint were sufficiently specific because it identified the enterprise participants by their occupations and roles. By alleging that FrontPath associated with third-party administrators, public officials, and the government-affiliated trustees, to coordinate bids

and use the trustees' influence to secure public contracts, Medical Mutual asserted that FrontPath had enough information to be able to identify its own third-party administrators and the public contracts on which they jointly bid.

{¶ 34} In its reply in support of the motion to dismiss, FrontPath argued that Medical Mutual misconstrued the holding in *Beverly*, and that nothing in *Beverly* eliminated the requirement to allege the existence both of an enterprise and the connected pattern of racketeering activity. Moreover, FrontPath contended that Medical Mutual failed to allege what role the un-named third-party administrators or other government officials played in the enterprise or how those parties participated, if at all, in the alleged corrupt activities. Thus, FrontPath concluded that Medical Mutual's allegations were nothing more than legal conclusions not sufficient for stating a claim.

{¶ 35} Upon consideration of the parties' arguments, the trial court granted FrontPath's motion to dismiss the Corrupt Practices Act claim. The trial court acknowledged that Medical Mutual sufficiently alleged a corrupt activity, but noted that the alleged corrupt activity was the use of a public position to obtain a personal benefit. However, the trial court found that Medical Mutual did not allege that any governmental actor benefited personally from his or her service on the FrontPath board. Therefore, the trial court granted FrontPath's motion to dismiss.

{¶ 36} On appeal, Medical Mutual focuses exclusively on the trial court's determination that the complaint must be dismissed because Medical Mutual did not

22.

allege that any government actor received a personal benefit. Medical Mutual argues that it is not required to allege a personal benefit, and that R.C. 2921.42(A)(1) makes it illegal for a public official to influence or secure authorization of any public contract in which "any of the public official's business associates has an interest." In this case, Medical Mutual argues that its allegation of a corrupt activity was sufficient because FrontPath is a business associate of the public officials who are also the "government-affiliated trustees."

{¶ 37} In response, FrontPath does not strenuously contest that the trial court erred when it determined that Medical Mutual's complaint failed to state a claim because it did not allege that the public officials received a personal benefit. Instead, FrontPath again suggests that Medical Mutual's complaint was not pled with sufficient specificity.

{¶ 38} Medical Mutual's argument on appeal addresses only the first of the three elements required to be alleged with particularity in order to survive a Civ.R. 12(B)(6) motion to dismiss the Corrupt Practices Act claim. Because we are reviewing the trial court's decision de novo, we will address each element in turn, relying upon the arguments made on appeal and in the trial court.

### a. Corrupt Activity

{¶ 39} Under the first element, Medical Mutual was required to allege with particularity that FrontPath was involved in a corrupt activity. "'Corrupt activity' means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or

23.

intimidating another person to engage in any of the following: * * * (2) Conduct constituting any of the following: (a) A violation of section * * * 2921.42 * * * of the Revised Code." R.C. 2923.31(I)(2)(a).

{¶ 40} In this case, Medical Mutual alleged that FrontPath was involved in at least two instances of unlawfully, willfully, and knowingly, soliciting and conspiring with others to violate R.C. 2921.42. R.C. 2921.42(A)(1) states that "No public official shall knowingly do any of the following: (1) Authorize, or employ the authority or influence of the public official's office to secure authorization of any public contract in which the public official, a member of the public official's family, or any of the public official's business associates has an interest." Specifically, Medical Mutual alleged that public officials utilized their authority and influence in the municipal entities to steer public contracts to FrontPath, for which they served on the board of trustees. Contrary to the decision of the trial court, we agree with Medical Mutual that the plain language of R.C. 2921.42(A)(1) does not require a showing that the public official received a personal benefit. We also agree that by virtue of serving on the board of trustees, the public officials are business associates of FrontPath. Furthermore, we find that FrontPath has an obvious interest in the public contract that it sought to be awarded. Therefore, we hold that Medical Mutual sufficiently pled with particularity that FrontPath was engaged in a corrupt activity.

24.

### b. Pattern of Corrupt Activity

**{¶ 41}** Under the second element, Medical Mutual was required to plead with particularity that FrontPath's conduct constituted a pattern of corrupt activity. "'Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). "[A] pattern of corrupt activity under the [Corrupt Practices Act] requires that predicate crimes be related and pose a threat of continued criminal activity." *Morrow*, 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, at ¶ 30.

**{¶ 42}** To determine whether a complaint alleges a pattern, courts should consider various factors, including "the length of time the racketeering activity existed; the number of different schemes (the more the better); the number of predicate acts within each scheme (the more the better); the variety of species of predicate acts (the more the better); the distinct types of injury (the more the better); the number of victims (the more the better); and the number of perpetrators (the less the better)." *Morrow* at ¶ 34, quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1110 (6th Cir.1995); *Sun Bldg. Ltd. Partnership v. Value Learning & Teaching Academy, Inc.*, 2021-Ohio-2008, 175 N.E.3d 10, ¶ 61 (1st Dist.).

**{¶ 43}** Here, Medical Mutual alleged only that the corrupt activity occurred over the course of "several years," and occurred on "multiple occasions." Medical Mutual also broadly alleged that the "predicate acts are related, in that they had the same or similar purposes, results, participants, victims, and methods of commission," and "[t]he predicate acts were continuous and occurred over multiple years, although the acts were not so connected that they constitute a single event."

**{¶ 44}** Upon review, we find that Medical Mutual's allegations as to the existence of a pattern contain no operative facts, and are merely a recitation of the statutory language. Medical Mutual does not allege when any of the predicate acts occurred, other than to say that they occurred continuously over several years, but it does not identify which years. Likewise, Medical Mutual does not identify any particular contract for which it submitted a bid, but which was ultimately awarded to FrontPath. Therefore, we hold that Medical Mutual failed to plead the existence of a pattern of corrupt activity with specificity. *See Fed. Land Bank Assn. v. Walton*, 3d Dist. Wyandot No. 16-94-9, 1995 WL 359856, *4 (June 16, 1995) (upholding dismissal of RICO claim where the complaint asserted legal conclusions, "but no facts or time period to which [it] was referring").

### c. Enterprise

**{¶ 45}** For the third element, Medical Mutual was required to plead with specificity the existence of an enterprise. "'Enterprise' includes any individual, sole

proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises." R.C. 2923.31(C). "The definition of 'enterprise' is remarkably open-ended." *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, ¶ 8. In this case, Medical Mutual alleged a de facto, or an "association-in-fact enterprise." "An association-in-fact enterprise has been defined as 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id.* at ¶ 9, quoting *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

{¶ 46} Here, we find that Medical Mutual satisfied its pleading requirement. Medical Mutual alleged that the enterprise consisted of FrontPath, representatives of the municipal corporations—at least one of whom was named—, third-party benefits administrators, and other public officials, and existed to "secure and control the market for health benefit services in Northwest Ohio." Medical Mutual further alleged that the enterprise operated by "FrontPath submit[ting] joint or coordinating bids with third-party administrators for government contracts, and representatives of the Governmental Employers and other public officials influenc[ing] the selection of those bids by the Governmental Employers." Thus, Medical Mutual demonstrated the existence of a group of persons engaging in a course of conduct for a common purpose.

27.

{¶ 47} In the trial court, FrontPath argued that an enterprise must have "a structure separate and apart, or distinct, from the pattern of corrupt activity," citing *Dixon v. Huntington Natl. Bank*, 8th Dist. Cuyahoga No. 100572, 2014-Ohio-4079, ¶ 17. However, the Ohio Supreme Court implicitly rejected this reasoning in *Beverly*. In that case, the court held, "the existence of an enterprise, sufficient to sustain a conviction for engaging in a pattern of corrupt activity under R.C. 2923.32(A)(1), can be established without proving that the enterprise is a structure separate and distinct from a pattern of corrupt activity." *Beverly* at ¶ 13; *see also Boyle v. United States*, 556 U.S. 938, 951, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009) ("The existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure. * * * [P]roof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise."). Thus, we hold that Medical Mutual was not required to plead an enterprise having a structure separate and apart from the pattern of corrupt activity, and that Medical Mutual satisfied its burden to plead the existence of an enterprise with specificity.

### d. Dismissal without Prejudice

{¶ 48} Because we find that Medical Mutual did not plead the existence of a pattern of corrupt activity with particularity, we hold that the Corrupt Practices Act claim fails to state a claim upon which relief can be granted.

28.

**{¶ 49}** Notwithstanding that, Medical Mutual alternatively argues that the trial court erred in dismissing its claim with prejudice and not allowing it to amend the complaint. We agree. "A trial court's grant of Civ.R. 12(B)(6) dismissal is without prejudice except in those cases where the claim cannot be plead in any other way." *STE Invests., LLC v. Macprep, Ltd.*, 6th Dist. Ottawa No. OT-21-036, 2022-Ohio-2614, ¶ 16, quoting *Krohn v. Ostafi*, 6th Dist. Lucas No. L-19-1002, 2020-Ohio-1536, ¶ 12. Additionally, "[i]f a motion for failure to state a claim is sustained, 'leave to amend the pleading should be granted unless the court determines that allegations of other statements or facts consistent with the challenged pleading could not possibly cure the defect.'" *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 549, 605 N.E.2d 378 (1992), quoting McCormac, Ohio Civil Rules of Practice (2 Ed.1992) 150, Section 6.20. "The [Civil Rules] are structured to allow prompt and summary disposition of cases at early stages in cases where recovery could not under any circumstances be made. * * * The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies. Civ.R. 1(B) requires that the Civil Rules shall be applied 'to effect just results.' Pleadings are simply an end to that objective." *Peterson v. Teodosio*, 34 Ohio St.2d 161, 174-175, 297 N.E.2d 113 (1973).

**{¶ 50}** Here, the claim was capable of being pled with more particularity regarding the alleged pattern of corrupt activity, thereby curing the defect. Consequently, we hold

29.

that the trial court erred when it dismissed Medical Mutual's Corrupt Practices Act claim with prejudice and denied Medical Mutual leave to amend the complaint.

{¶ 51} Accordingly, Medical Mutual's first assignment of error is well-taken.

### B. Denial of Leave to Amend the Complaint

{¶ 52} Finally, in its third assignment of error, Medical Mutual argues that the trial court abused its discretion when it denied Medical Mutual's motion for leave to file a second amended complaint.

{¶ 53} Relevant here, Civ.R. 15(A) provides that a party may amend its pleading with the court's leave. "The court shall freely give leave when justice so requires." *Id.* "While the rule allows for liberal amendment, motions to amend pleadings pursuant to Civ.R. 15(A) should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party." *Turner v. Cent. Local Sch. Dist.*, 85 Ohio St.3d 95, 99, 706 N.E.2d 1261 (1999), citing *Hoover v. Sumlin*, 12 Ohio St.3d 1, 465 N.E.2d 377 (1984), paragraph two of the syllabus.

{¶ 54} "A trial court's denial of a motion for leave to amend a pleading will not be reversed absent an abuse of discretion." *Leo v. Burge Wrecking, LLC*, 2017-Ohio-2690, 89 N.E.3d 1268, ¶ 9 (6th Dist.), citing *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996). An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### 1. Trial Court's Judgment Denying the Motion for Leave to Amend

{¶ 55} On January 30, 2020, approximately two and one-half years after the original complaint was filed, Medical Mutual moved for leave to file its second amended complaint. Medical Mutual asserted that documents produced in discovery showed that FrontPath, along with proposed new defendants Don Czerniak and Susan Szymanski, obtained Medical Mutual's trade secret information in violation of state and federal trade secret statutes, including at times while the litigation was pending. Medical Mutual sought to add the two new defendants to all of the existing claims, and also sought to add three new claims against all defendants under the Ohio Corrupt Practices Act, Ohio's Trade Secrets Act, and the federal Defend Trade Secrets Act. In seeking to add the new defendants to the existing claims, Medical Mutual recognized that the trial court had already dismissed Counts I, II, IV, and V, but included those counts for purposes of protecting the record on appeal.

{¶ 56} In support of its motion, Medical Mutual argued that it had not acted in bad faith, and that the proposed amended complaint would not cause undue delay or prejudice. Medical Mutual noted that the active case management order did not provide a deadline to amend pleadings or add additional parties. Further, Medical Mutual recognized that discovery was stayed by the court for much of the lawsuit pending FrontPath's production of documents. Consequently, at the time of the motion for leave to amend, neither party had deposed a witness, identified potential experts, or submitted

31.

motions for summary judgment. Medical Mutual also argued that the defendants' alleged wrongful conduct was only discovered—and could only have been discovered—after a careful review of the documents produced by FrontPath in 2019, including documents which showed that some of the alleged conduct occurred while the litigation was pending. Lastly, Medical Mutual argued that the amended complaint would not substantially alter the scope of discovery, which already included responsive documents regarding the claim that FrontPath conspired with third-party administrators, public officials, and others to secure and control the market for health benefit services in northwest Ohio. Medical Mutual asserted that the newly added defendants participated in the scheme, and the newly added claims elaborate on how the defendants accomplished the goals of the enterprise.

{¶ 57} After briefing by the parties, the trial court entered its judgment on June 16, 2020, denying Medical Mutual's motion for leave to file a second amended complaint. In reaching its decision, the trial court found that Medical Mutual's request to amend the complaint was untimely, and would be prejudicial to FrontPath and to the proposed additional defendants. The trial court reasoned that the case has been pending for nearly three years, and discovery has been ongoing since 2017. The court also noted that discovery oftentimes has been contentious, and the parties have been litigating and conducting discovery under a closed set of pleadings since June 14, 2019, when the trial court granted FrontPath's Civ.R. 12(B)(6) motion to dismiss as to all of the claims except

32.

for tortious interference with a business or contractual relationship. Further, the discovery deadline has been moved more than once, and the parties have continued to disagree about the appropriate scope of discovery. The court found that Medical Mutual's proposed additional claims would significantly expand the scope of discovery, and would result in additional pleadings and dispositive motions that would impact the parties' ability to comply with the case management schedule. The court noted that the deadline for mediation was only a few months away, and the parties already anticipate a tight discovery and dispositive motion practice schedule through the trial date set for March 2021.

{¶ 58} In addition, the trial court found that Medical Mutual certainly knew of the identities and alleged involvement of the proposed additional defendants prior to filing its motion for leave to file the second amended complaint. In support of this finding, the trial court referenced Medical Mutual's original claim that FrontPath had an informational advantage because certain governmental employees were allegedly "wearing two hats." Finally, the court found that the prejudice to the proposed additional defendants would be severe as they would be thrust into the late stages of a case with a lengthy history, and would be given a very short time under the existing case schedule to prepare to take discovery, to participate in mediation, and to hire experts.

{¶ 59} Alternatively, the trial court found that the motion for leave to file a second amended complaint should be denied because the amendment would be futile.

Addressing the proposed Corrupt Practices Act claim in Count VI, the trial court found that the proposed second amended complaint failed to state a claim upon which relief could be granted.[1]  Specifically, the trial court found that the second amended complaint did not allege the existence of a corrupt activity, a pattern of corrupt activity, and an enterprise.

{¶ 60} As to the existence of a corrupt act and a pattern of corrupt activity, the trial court found that the second amended complaint generally alleged

> at least two predicate acts, including but not limited to, unlawfully, willfully, and knowingly, soliciting and conspiring with others to violate 18 U.S.C. § 1832, which makes it a crime for Defendants to steal, appropriate, take, carry away, copy, duplicate, sketch, draw, photograph, download, upload, alter, destroy, photocopy, replicate, transmit, deliver, send, mail, communicate, or convey Plaintiffs' trade secrets in such a way that benefits anyone other than the Plaintiffs or causes harm to Plaintiffs.

However, the court found that the second amended complaint only specifically alleged two violations of 18 U.S.C. § 1832, one occurring in 2015, and another occurring in

---

[1] In addition to finding that the proposed Corrupt Practices Act claim in Count VI failed to state a claim upon which relief could be granted, the trial court found that the allegations of violations of the Federal Defend Trade Secrets Act and the Ohio Trade Secrets Act in Counts VII and VIII, respectively, likewise failed to state claims upon which relief could be granted.  Regarding those claims, the trial court found that they were barred by the statute of limitations.  On appeal, Medical Mutual does not raise any arguments pertaining to those claims, thus we will not address their dismissal by the trial court.

34.

2017. Because the 2015 violation occurred outside of the statute of limitations, the trial court held that it could not be used as a predicate act for a Corrupt Practices Act claim. Moreover, the trial court found that Medical Mutual's allegations reveal a single scheme to exclude Medical Mutual's competition in northwest Ohio, and the allegations consist of one type of predicate act, causing one type of injury, to one victim. Thus, the court found that the second amended complaint does not allege a pattern of corrupt activity.

{¶ 61} As to the existence of an enterprise, the trial court found that Medical Mutual's allegations were vague in that they included no particularities about the identities of those in the alleged enterprise, nor did they describe the alleged enterprise's structure. Furthermore, the court found that Medical Mutual did not allege that there was an enterprise separate and apart from the corrupt activity.

### 2. Whether the Second Amended Complaint was Untimely or Unduly Prejudicial

{¶ 62} On appeal, Medical Mutual first argues that its request to file a second amended complaint was neither untimely nor prejudicial. Upon consideration of the record and litigation history, we agree.

{¶ 63} The trial court's decision emphasizes the fact that the litigation had been pending for almost three years, which we agree is an undesirably long time. But, when considering whether an attempt to amend a pleading is untimely, we find that the temporal relationship to the proceedings, rather than the absolute length of time, is of much greater importance. While prejudice and timeliness are related considerations,

35.

"prejudice is the most critical factor to be considered in determining whether to grant leave to amend." *Musil v. Gerken Materials, Inc.*, 6th Dist. Lucas No. L-19-1262, 2020-Ohio-3548, ¶ 25, citing *CommuniCare, Inc. v. Wood Cty. Bd. of Commrs.*, 161 Ohio App.3d 84, 89, 2005-Ohio-2348, 829 N.E.2d 706, ¶ 17 (6th Dist.). Thus, although "amendment after an unjustified delay could result in prejudice to the opposing party," *Zak v. Airhart*, 6th Dist. Lucas No. L-21-1052, 2021-Ohio-4399, ¶ 37, an amendment may not be as prejudicial where it was made without delay or with justified delay.

{¶ 64} In this case, the original complaint was filed on June 27, 2017, and after being granted an extension, FrontPath answered on August 28, 2017. An initial pretrial hearing was held on October 5, 2017, at which the parties were granted 60 days to submit a joint report defining the issues and scope of discovery in preparation of another pretrial hearing on December 12, 2017. The trial court stayed all discovery until the December 12, 2017 pretrial. Following the December 12, 2017 pretrial, discovery commenced subject to a joint stipulated protective order concerning confidential material. A subsequent pretrial was held on March 22, 2018, at which FrontPath was granted additional time until April 2018 to answer pending interrogatories and to produce responsive records.

{¶ 65} On May 22, 2018, the trial court held a pretrial at which it established a preliminary case management order. The preliminary order established a written discovery deadline of December 7, 2018, and a non-expert discovery deadline of June 3,

2019. The court further ordered that dispositive motions were to be filed by November 4, 2019.

{¶ 66} In August 2018, FrontPath moved for judgment on the pleadings. Ultimately, Medical Mutual moved to amend its complaint in October 2018, which FrontPath did not oppose. The trial court granted Medical Mutual's motion to file the amended complaint, and the amended complaint was filed on November 5, 2018, thereby rendering moot FrontPath's motion for judgment on the pleadings.

{¶ 67} Shortly after the amended complaint was filed, FrontPath moved to dismiss the amended complaint. The parties litigated the issue, resulting in the trial court's June 24, 2019 judgment entry dismissing all of Medical Mutual's claims except for tortious interference with a contractual or business relationship, which is discussed above in Medical Mutual's first and second assignments of error.

{¶ 68} Concurrent with the litigation on the motion to dismiss, on November 26, 2018, FrontPath filed an emergency motion for a protective order regarding Medical Mutual's November 20, 2018 subpoenas. The trial court held a hearing on the emergency motion a few days later, on December 7, 2018. At the December 7, 2018 hearing, the parties agreed to suspend compliance with all third-party subpoenas. The parties also recognized that FrontPath was still in the process of responding to additional discovery requests from Medical Mutual, and that upon such production, Medical Mutual would then either withdraw the third-party subpoenas, or elect to proceed with the third-party

37.

subpoenas, at which time the trial court would hear and decide the emergency motion for a protective order. The court ordered that all discovery was stayed pending the resolution of the emergency motion for a protective order, except for FrontPath's agreed-upon responses to Medical Mutual's additional request for documents. On January 7, 2019, FrontPath served its responses to Medical Mutual's second combined set of interrogatories and requests for production of documents.

{¶ 69} A further pretrial was held on April 5, 2019. At that pretrial, the case management order was amended to provide a new discovery deadline of December 20, 2019. Dispositive motions were ordered to be filed by May 11, 2020, and mediation was ordered to be completed by June 1, 2020. Jury trial was set for September 14, 2020.

{¶ 70} On June 27, 2019, another pretrial hearing was held. Because the trial court had just three days earlier granted, in part, FrontPath's motion to dismiss the amended complaint, the trial court invited the parties to submit post-hearing briefs to allow FrontPath to argue why the scope of discovery should be limited, to allow Medical Mutual to argue why the information it is seeking is relevant and discoverable, and to allow both parties to address the third-party subpoenas. Following the hearing, on October 1, 2019, the trial court ordered that Medical Mutual could seek information pertaining to the names of potential entities that it bid and lost to FrontPath within a five-year time period, and then discovery would be limited to those entities rather than all governmental employers for whom FrontPath has provided services. The court further

38.

ordered that FrontPath's provider pricing was in the nature of a trade secret, that it was not relevant at that time, and thus was not discoverable. Lastly, the trial court approved FrontPath's proposed disclosure process to lift the stay on certain third-party discovery.

{¶ 71} Approximately four months after the trial court's October 1, 2019 order regarding the scope of discovery, Medical Mutual moved for leave to file its second amended complaint on January 30, 2020. Subsequent to its motion for leave to file its second amended complaint, on March 26, 2020, the parties filed a stipulated amendment to the case management schedule, seeking to extend the existing deadlines by six months. On March 31, 2020, the trial court amended the case management schedule, setting a new discovery deadline of June 19, 2020, a mediation deadline of September 1, 2020, and a dispositive motion deadline of January 11, 2021. Trial was set for March 15, 2021.

{¶ 72} On June 2, 2020 the parties filed a joint status report and stipulation to amend the case management order. In their filing, the parties noted that they continued to engage in written discovery, and anticipated supplementing their prior responses to interrogatories. The parties also commented that although certain depositions had been previously scheduled, those depositions were cancelled in response to Covid-19. Recognizing that the current discovery deadline was June 19, 2020, the parties stipulated to a fact deposition discovery deadline of December 1, 2020. The parties also stipulated that additional third-party discovery may proceed.

39.

**{¶ 73}** Two weeks later, the trial court denied Medical Mutual's motion for leave to file a second amended complaint.

**{¶ 74}** In its opposition to Medical Mutual's motion for leave to amend, FrontPath cited two cases in support of its argument that Medical Mutual's second amended complaint was untimely and prejudicial.

**{¶ 75}** In the first case, *Turner v. Cent. Local Sch. Dist.*, 85 Ohio St.3d 95, 706 N.E.2d 1261 (1999), the Ohio Supreme Court held that the trial court abused its discretion when it allowed an untimely motion to amend the answer to assert an affirmative defense of immunity. In that case, Central moved for summary judgment on Turner's negligence claim, arguing that the injury to Turner was not foreseeable. Summary judgment was awarded to Central, but ultimately reversed on appeal on the grounds that questions of fact remained. *Id.* at 96. Upon remand, Central moved to amend its answer to assert the defense of statutory immunity. *Id.* The Ohio Supreme Court reasoned that the motion for leave to amend was untimely and unfairly prejudicial, noting that it was made two years and ten months after the litigation had commenced, and after a trial date had been set. *Id.* at 99. The court also recognized that the motion came after all experts were in place, and discovery was complete. *Id.* Lastly, the court was troubled by the fact that Central did not give a rationale for waiting so long to assert an obvious defense that "most likely would have terminated the litigation in the first instance, or at the very least, would have narrowed the issues remaining for resolution."

40.

*Id.* The Ohio Supreme Court therefore reasoned that the amendment unfairly prejudiced Turner, who had already been forced to expend time, resources, and money to oppose the first motion for summary judgment and the appeal therefrom. *Id.*

{¶ 76} In the second case, *Columbia Gas of Ohio, Inc. v. Toledo Edison Co.*, 6th Dist. Lucas No. L-14-1263, 2015-Ohio-3942, ¶ 27-28, this court held that the trial court did not abuse its discretion when it denied the plaintiff's motion for leave to amend its complaint. In that case, the motion for leave to amend was filed almost two years after the original complaint had been filed and after extensive discovery had been conducted, and one day after the trial court denied the plaintiff's motion to continue the trial date and set alternative cut off dates. *Id.* at ¶ 27. The plaintiff filed its leave to amend less than one week before the deadline for filing summary judgment motions, and after the deadlines for disclosing expert witnesses. *Id.* In affirming the trial court's denial of the plaintiff's motion for leave to amend, this court noted that the plaintiff offered no explanation for the delay other than vaguely stating that it was necessary to "update and refine the allegations to conform to the information revealed by discovery." *Id.* at ¶ 28. This court also found that the defendant would be prejudiced because the defendant would have to file additional pleadings, further discovery would be needed, and the deadline for filing motions for summary judgment would have to be extended. *Id.*

{¶ 77} In addition to the cases cited by FrontPath, we have also addressed the issue of whether an amendment is untimely and unfairly prejudicial in two recent cases.

41.

{¶ 78} In *Musil*, 6th Dist. Lucas No. L-19-1262, 2020-Ohio-3548, at ¶ 23-29, this court affirmed the trial court's denial of Musil's motion for leave to amend the complaint. In that case, the motion was filed more than a year after the original complaint, more than eight months after discovery was substantially completed, almost seven weeks after the defendant filed its motion for summary judgment, and just two months before the trial date. *Id.* at ¶ 28. This court reasoned that Musil knew of the facts giving rise to his amended complaint for more than eight months before filing his motion, and that "the costs of continued litigation, both in terms of time and resources, constitutes prejudice to [the defendant] where [Musil] waited to file a motion for leave to amend until after [the defendant] filed a meritorious motion for summary judgment." *Id.* at ¶ 29.

{¶ 79} Similarly, in *Zak*, 6th Dist. Lucas No. L-21-1052, 2021-Ohio-4399, at ¶ 29-40, this court affirmed the denial of a motion for leave to amend the answer to plead statute of limitations as an affirmative defense. In *Zak*, the defendant did not raise the statute of limitations in his motion for summary judgment, and only raised it for the first time in his reply in support of his motion for summary judgment. The trial court denied the defendant's motion for summary judgment, finding that he waived the statute of limitations defense. Thereafter, less than a month before the trial date, the defendant filed a motion for leave to amend his answer to assert the statute of limitations defense. The trial court denied the motion, finding that it would jeopardize the trial date and would require a reopening of discovery to address the new defense. On appeal, this court

42.

affirmed, holding that the trial court did not abuse its discretion in denying leave to plead an "eleventh hour affirmative defense." *Id.* at ¶ 39. This court reasoned, "To require amendment in such circumstances would subject an opposing party to piecemeal motions that delay trial and force duplication of time and resources in responding to the newly asserted defenses." *Id.*

{¶ 80} In contrast, in *Christ v. Konski*, 181 Ohio App.3d 682, 2009-Ohio-1460, 910 N.E.2d 520 (6th Dist.), this court reversed the trial court's judgment vacating its own prior order to grant the appellant's motion for leave to amend his complaint to add a new party defendant. In *Christ*, the original complaint was filed on August 9, 2005, then voluntarily dismissed, and re-filed on January 7, 2008. *Id.* at ¶ 5-6. The refiled complaint was intended "to reflect the intervening death of Christ, as well as to curtail the volume of defendants named in the refiled action." *Id.* at ¶ 6. On June 11, 2008, the appellant deposed one of the defendant's medical expert witnesses, and based on that testimony sought to add an additional defendant. *Id.* at ¶ 7-8. The trial court initially granted the motion for leave to amend the complaint, and at the same time vacated the scheduled August 18, 2008 trial date. The defendant then sought relief from that judgment, arguing that the motion for leave to amend was untimely and unduly prejudicial, and asserting that vacating the trial date would adversely affect the defendant's patient care, ability to earn a living, and insurance status. *Id.* ¶ 10. The trial court adopted the defendant's arguments without limitation, vacated its previous order,

43.

and struck the amended complaint from the record. However, the trial court affirmed its prior order vacating the trial date. *Id.* at ¶ 11.

{¶ 81} On appeal, this court reversed the decision of the trial court, finding that it was unreasonable and arbitrary. This court reasoned that the appellant's motion was not untimely, as it was filed within a week of the deposition where it learned of the basis for adding the new defendant. Furthermore, this court recognized that while adding a new defendant may involve inconvenience in the form of additional discovery and the continuation of the trial date, there was nothing in the record to establish undue, actual prejudice. *Id.* at ¶ 18. To the contrary, this court stated, "barring appellant from pursuing action against the pathologist whom appellee's own expert witness believes breached the standard of care with adverse consequences to decedent would constitute extreme actual prejudice." *Id.* Thus, this court held that the trial court abused its discretion because neither unreasonable delay nor actual prejudice were shown, and because the trial court simply adopted the arguments of the defendant yet those arguments contradicted the portion of the judgment that vacated the trial date. *Id.* at ¶ 19.

{¶ 82} Upon review, the facts of this case are much more closely aligned to *Christ*, than to *Turner*, *Columbia Gas*, *Musil*, or *Zak*. Here, the motion for leave to amend was not filed on the eve of trial, after discovery had been completed, and either after dispositive motions had been made or were just about to be made. To the contrary, discovery was ongoing, and would later be extended by stipulation twice for almost

44.

another year after the motion for leave to amend was filed. At the time the trial court denied Medical Mutual's motion for leave to amend, no depositions had been taken, and the parties contemplated that discovery would continue for at least another six months, and dispositive motions were not due for approximately seven months. In addition, third-party discovery in this complex case had only begun four months earlier, and had not to that point received much response. This is not a case where Medical Mutual dilatorily sat upon information, then sought to amend its complaint at a late stage. Instead, the record shows that Medical Mutual sought to amend its complaint as it received new information from the protracted and ongoing discovery provided by FrontPath.

{¶ 83} Nor do we find reasonable the trial court's conclusion that Medical Mutual knew of the identity and alleged involvement of the proposed additional defendants at the time of the original complaint. In so concluding, the trial court referenced Medical Mutual's general allegation that FrontPath had an informational advantage because some governmental employees were "wearing two hats." However, a general allegation of an informational advantage does not mean that Medical Mutual knew or could have known that the proposed additional defendants were stealing Medical Mutual's trade secret pricing information as alleged in the second amended complaint. Furthermore, the trial court's conclusion that the proposed additional defendants would be unduly prejudiced by being added to the lawsuit is unreasonable. A new defendant is always prejudiced by having to defend against allegations in court, and such a defense would certainly be

burdensome in complex cases. However, that prejudice is not unfair where the facts underlying the allegation were discovered, and motion for leave to amend was filed, at a relatively early stage of the litigation. Indeed, it would be monumentally more unfair to not allow a plaintiff to seek recovery against a defendant for wrongdoing simply because it would be expensive and burdensome for the defendant to have to defend himself or herself.

{¶ 84} Finally, while amending the complaint would have expanded the scope of discovery relative to FrontPath—although it is unclear to us how significantly it would have expanded the scope given that the proposed additional claims arose out of the same transactions as the claims in the original and amended complaints for which written discovery had been ongoing, and given that it would not have required a second round of depositions because no depositions had yet occurred—that expansion was largely due to the trial court's prior erroneous dismissal with prejudice of Medical Mutual's claims.

{¶ 85} Thus, while we recognize that the addition of new claims and defendants would result in the inconvenience and cost of additional pleadings and discovery, we hold that it is not *unduly* prejudicial to FrontPath, or the proposed additional defendants, where the information was learned during the course of the litigation, and the motion for leave to amend the complaint was made while the litigation was still in the discovery phase and months before any dispositive motions were due to be filed. Therefore, we hold that the

46.

trial court abused its discretion when it denied Medical Mutual's motion for leave to file its second amended complaint as untimely and unduly prejudicial.

### 3. Whether the Second Amended Complaint was Futile

{¶ 86} Alternatively, the trial court justified its denial of Medical Mutual's motion for leave to amend on the basis that the motion was futile because the second amended complaint failed to state a claim upon which relief could be granted.

{¶ 87} "Where a plaintiff fails to make a *prima facie* showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading." *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illuminating Co.*, 60 Ohio St.3d 120, 573 N.E.2d 622 (1991), syllabus. This consideration "is meant to aid in determining whether the amendment is 'simply a delaying tactic, [or] one which would cause prejudice to the defendant.'" *Darby v. A-Best Prods. Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, 811 N.E.2d 1117, ¶ 20. Because consideration of whether a proposed claim would survive a motion to dismiss is a legal issue, we review de novo the trial court's denial of the motion for leave to amend the complaint on this basis. *Hollinghead v. Bey*, 6th Dist. Lucas No. L-99-1351, 2000 WL 1005205, *8 (July 21, 2000), citing *Marx v. Ohio State Univ. College of Dentistry*, 10th Dist. Franklin No. 95APE07-872, 1996 WL 87462, *3 (Feb. 27, 1996).

47.

{¶ 88} Having already discussed the elements of a Corrupt Practices Act claim in Medical Mutual's first assignment of error, we will address the elements in a truncated fashion.

### a. Corrupt Activity

{¶ 89} In its judgment entry, the trial court found that Medical Mutual only specifically alleged two corrupt activities, those being violations of the federal Defending Trade Secrets Act and its Ohio counterpart, but that one of the corrupt activities occurred before the Defending Trade Secrets Act was enacted. However, the trial court did not consider the other parts of the second amended complaint, which were incorporated by reference, and which alleged that the defendants also violated the Ohio ethics laws under R.C. 2921.42(A)(1). Thus, the second amended complaint sufficiently alleged a corrupt activity.

### b. Pattern of Corrupt Activity

{¶ 90} As to the pattern of corrupt activity, the trial court found that Medical Mutual alleged a single scheme to exclude its competition in northwest Ohio, and that the scheme consisted of only one type of predicate act causing only one type of injury to only one victim. The trial court reasoned that this type of allegation was insufficient to constitute a pattern of corrupt activity. Again, the trial court did not consider the other allegations in the complaint.

48.

{¶ 91} In this case, Medical Mutual alleged that FrontPath and others engaged in multiple acts violating R.C. 2921.42(A)(1) and the federal Defend Trade Secrets Act and its Ohio counterpart, that those acts were in furtherance of the goal to secure public contracts for FrontPath and its third-party administrative partners, that those activities occurred on multiple instances with multiple government entities over a course of years, and that those activities culminated in FrontPath being awarded multiple public contracts. Unlike the amended complaint, the second amended complaint provided specific allegations that certain actors took certain actions in 2015, 2017, and 2019.[2] Taking these allegations as true, and construing any reasonable inferences from them, we hold that the second amended complaint sufficiently alleged a pattern of corrupt activity.

### c. Enterprise

{¶ 92} Finally, the trial court found that the second amended complaint "include[d] no particularities about the identities of those in the alleged association-in-fact enterprise, nor do they describe the alleged enterprise's structure." As with the other two elements, the trial court did not consider the entirety of the allegations in the second amended complaint.

{¶ 93} Medical Mutual alleged that the enterprise consisted of: "among others, representatives of the Governmental Employers, third-party administrators, other public

---

[2] The second amended complaint was filed under seal. We have reviewed the second amended complaint, but because of the confidentiality of the document, we will not repeat the specific allegations.

officials, consultants and others and exists to secure and control the market for health benefit services in Northwest Ohio." The factual allegations in the complaint, however, specifically name FrontPath, the proposed additional defendants, the third-party administrator HealthScope, and several other named individuals as being involved. Thus, we hold that the second amended complaint sufficiently alleged the existence of an enterprise.

{¶ 94} Therefore, because the second amended complaint alleged with particularity the existence of a corrupt activity, a pattern of corrupt activity, and an enterprise, we hold that the second amended complaint was not futile.

### 4. Relief Limited

{¶ 95} In sum, because the second amended complaint was not untimely or unduly prejudicial, and because it was not futile, we hold that the trial court abused its discretion when it denied Medical Mutual's motion for leave to amend.

{¶ 96} However, the scope of Medical Mutual's third assignment of error only pertains to the additional new defendants, Donald Czerniak and Susan Szymanski. App.R. 12(A)(1)(b) mandates that "a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16 * * *." For this reason, it is well settled that "[a]ppellate courts determine appeals on the basis of assignments of error rather than arguments in support of assignments of error." *Bodager v. Campbell*, 4th Dist. Pike No. 12CA828, 2013-Ohio-4650, ¶ 32; *see also Jensen v.*

50.

*AdChoice, Inc.*, 6th Dist. Lucas No. L-14-1014, 2014-Ohio-5590, ¶ 23, fn. 4, quoting

*Bonn v. Bonn,* 10th Dist. Franklin No. 12AP-1047, 2013-Ohio-2313, ¶ 9 (Refusing to

consider an issue that was "not raise[d] * * * as part of [appellant's] assignment of error *

* *" because "'this court rules on assignments of error only, and will not address mere

arguments.'"); *Evans v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 18AP-

713, 2019-Ohio-3788, ¶ 11, fn. 2 (Refusing to consider an issue that "does not correlate

with [appellant's] sole assignment of error" because appellate courts must "determine

appeals based on assignments of error, not mere arguments * * *.").

{¶ 97} Here, the third assignment of error asserts:  "The trial court erred by

denying MMO's motion for leave to amend its complaint *to assert claims against new*

*defendants Donald Czerniak and Susan Szymanski*."  (Emphasis added.)

{¶ 98} Our decision is therefore confined to resolution of this assigned error.

{¶ 99} Accordingly, Medical Mutual's third assignment of error is well-taken.

### IV. Conclusion

{¶ 100} For the foregoing reasons, we find that substantial justice has not been

done the party complaining.  The trial court erroneously dismissed with prejudice

Medical Mutual's civil liability for a criminal act and Corrupt Practices Act claims.  The

trial court abused its discretion when it denied Medical Mutual's motion for leave to

amend the complaint to assert claims against new defendants Daniel Czerniak and Susan

Szymanski.  Therefore, as described above, the June 24, 2019, and June 16, 2020

51.

judgments of the Lucas County Court of Common Pleas are reversed.  This matter is

remanded to the trial court for further proceedings consistent with this decision.

FrontPath is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments reversed<br>and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                                        _____
                                                             JUDGE

Thomas J. Osowik, J.


Christine E. Mayle, J.                        _____
CONCUR.                                                           JUDGE


                                                       _____
                                                             JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.